## C. E. LEWIS *et al. v.* E. D. PARKER *et al.*

*(In the District Court, Arapahoe County, November, 1883.)*

1. STATUTORY CONSTRUCTION. Courts should not declare a statute a nullity when they can find any reasonable way of avoiding it, nor should they declare particular words of a statute of no effect, unless compelled so to do in order to save the rest of the statute. Courts should not legislate, neither should they destroy legislation, when, by careful and conservative decisions, legislative enactments may be upheld. Any unnecessary overthrow of an act of the General Assembly, by judicial decision, is as much a usurpation of legislative power as an attempt at affirmative legislation.

2. CIVIL CODE, SEC. 116.—ITS OBJECT AND MEANING. The object of this statute is, and always has been, that creditors pursuing the same debtor by attachments should, whenever that is practicable, under certain conditions and limitations as to time, prorate in the proceeds of the property attached; time was, under the old system, as well as under the new; the essential condition and limitation. The words of this section, "returned to the same term of the Court to which they are returnable," should be held to mean and apply to all writs of attachment which are in fact returned *to, at* or during the same term of Court at which, or during which, they may be properly returnable according to law.

3. ATTACHING CREDITORS—WHEN ALLOWED TO PRORATE. Where attachment suits are brought by several creditors, and their writs are properly returned to the same term of Court, and judgments are regularly obtained thereon, an order will·be entered directing the sheriff to divide the proceeds realized from the sale of the attached property among such attaching creditors, in accordance with Sec. 116 of the Code.

ELLIOTT, J. The plaintiffs' petition shows that the following proceedings were had and concluded in this Court at the April Term, 1883.

On May 26, at 8 a. m., Daniels & Fisher commenced suit by attachment against the above named defendants; June 7th, recovered judgment for $2,705.65; issued execution, and on June 19 sold the attached property for $3,461.11.

On May 26, at 5.30 p. m., the plaintiffs herein commenced suit by attachment against said defendants, caused the writ to be levied on same property, and on June 8 recovered judgment for $978.73, and caused execution to be levied on same property.

On May 28, one B. L. James commenced suit by attachment against said defendants, caused the writ to be levied on same property, and on June 11 recovered judgment for $310.00, and caused execution to be levied on same property.

The several writs were duly returned during said April term; no other attachment writs were returned or returnable, and no other civil judgments were rendered in said Court against the defendants during said term; the proceedings were regular, and the averments of the petition are uncontradicted.

The plaintiffs now ask that they, as well as the said B. L. James, be allowed their prorate proportion of the sum realized on the sale of the attached property, in pursuance of section 116 of the Code.

So much of section 116 of the Code as is necessary to the determination of the plaintiffs' motion, is in the words following:

Sec. 116. In all cases where more than one attachment shall be issued against the same person or persons, and returned to the same term of Court to which they are returnable, or when a judgment in a civil action shall also be rendered at the same term against the defendant, who is the same person and defendant in the attachment or attachments, the Court shall direct the Clerk to make an estimate of the several amounts each attaching or judgment creditor will be entitled to, out of the property of the defendant attached, either in the hands of the garnishee or otherwise, after the sale and receipt of the proceeds thereof by the sheriff, calculating such amount in proportion to the amount of their several judgments, with costs, as the same will respectively bear to the amount of the sum received, so that each attaching and judgment creditor will receive his just part thereof in proportion to his demand; the clerk shall thereupon certify the several amounts thereof to the sheriff, who shall pay over to the respective parties the several sums so certified, and endorse such payments on the respective executions.

This section is an almost literal rescript of the statute of 1861; it appears again in the Revised Statute of 1868, and has thus existed as a favorite statute from the earliest legal history of Colorado. This statute was undoubtedly copied from Illinois at the time of its first adoption in Colorado. At that time, under our practice, writs of attachment, like writs of summons in civil actions, were returnable to a particular return day in a term of Court; and hence it is contended that the words, "same term of the Court to which they are returnable," must receive the same construction given to them by the Illinois Courts, where like writs were also returnable to a particular "return

day," according to the rule that where one State adopts a stat-
ute which has received a settled construction in the State from
which it comes, the construction given to it by the latter State
is adopted with the statute. This was undoubtedly a correct
application of the rule under our former practice; but we must
bear in mind that with the adoption of the Code the practice of
making writs returnable to a particular return day, or "to the
term," as sometimes expressed, was repealed, and an entirely
new system in reference to the return of writs was established,
to which system rules of construction in conflict therewith
must yield. Therefore, the Legislature in using these words
in this section of the Code, should not be held to have intended
a meaning which they had expressly rendered obsolete in our
practice by that very enactment. Under the Code there was
no longer any "return day" or term to which, in the former
technical sense, either writs of summons or writs of attach-
ment were returnable. Section 1, Chapter 70, R. S. 1868, by
reference to which the words in question had been construed,
ceased to exist when Section 116 and the rest of the Code came
into effect. So we are forced to one of three alternatives:

*First*—Either to give these words some other construction;

*Second*—Declare that the words, "to which they are returna-
ble," no longer have any legal effect;

*Third*—Or, else render the entire statute nugatory.

Courts should not declare a statute a nullity when they can
find any reasonable way of avoiding it, nor should they declare
particular words of a statute of no effect, unless they are com-
pelled so to do in order to save the rest of the statute; they
should exercise the greatest diligence and care to find some
means by which to preserve and enforce a statute before declar-
ing either the whole or any part of it void. Courts should not
legislate; neither should they destroy legislation when, by care-
ful and conservative decisions, legislative enactments may be
upheld. It does not matter that the language of an act may be
inartificial and crude, or that its provisions may be difficult of
enforcement, or that its policy may be distasteful to the Courts,
or even that it may not be, in the opinion of the Judges,
just and equitable; so long as it is within the sphere of civil
government and not clearly obnoxious to the Constitution of
the State or Nation, it is the duty of the Courts to enforce it so

far as it is capable of enforcement, whenever proper application is made therefor.    I do not mean to be understood as saying that the act in question falls within the category of all or any of the foregoing objections; but if it should seem to be amenable to any and every such criticism, still it should be upheld and enforced till repealed.    Any unnecessary overthrow of an act of the General Assembly by judicial decision is as much a usurpation of legislative power as an attempt at affirmative legislation.

But we do not need to invoke the terrors of the law against judicial legislation or usurpation in order to save the act in question.    We may always properly look first to the act itself for the true interpretation and construction thereof.

The Code declares, "Sec. 445.   The provisions of this act shall be liberally construed, and shall not be limited by any rules of strict construction."

And again,

"SEC. 446.   The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code.  *Its provisions, and all proceedings under it, shall be liberally construed, with a view to promote its object, and assist the parties in obtaining justice.*"

Now, manifestly, the object of the statute is, and always has been, that creditors pursuing the same debtor by attachment, should, whenever that end is practicable, under certain conditions and limitations as to time, prorate in the proceeds of the property attached.  Time, under the old system, as well as under the new, was the essential condition and limitation.    The returnability of the attachment writs and their actual return, served to limit the time as to the attaching creditors, but creditors by civil judgments "rendered" at the proper term were permitted to prorate without reference to the returnability of their writs, and even if their judgments were rendered without summons at all, as by confession or voluntary appearance.

If we find no difficulty in the particular case in which the prorating is demanded, why should we hesitate to comply with the statute?   It is said that the difficulty lies in the fact that as to writs of attachment there are no longer any terms "to which they are returnable."   Is this true in substance and in

fact? We have seen that under our former system these words, "returnable to a term of Court," had a technical and definite signification, and that if such system still prevailed we would feel bound to give the words that particular meaning; but with the repeal of that system we should give these words a construction consistent with the new system, and certainly we should do this, if, by resorting to their common and ordinary meaning, we are able to give them a construction which will sustain rather than defeat the statute. The word, "returnable,'' is defined by Webster thus:

1. "Capable of being returned." 2. "(Law) Legally required to be returned   *   *   *   as a writ returnable at a certain day; a verdict returnable to the Court."

There is no "return day" for a verdict; yet it is returnable to the Court, and to the particular term of Court at which the cause is tried. Writs are "returnable", and "returnable to the Court," as well under the Code as under our former practice; it was only the "return day" that was changed. Generally, writs are now to be returned, and therefore "returnable" as soon as served, and not before. Section 115 of the Code may constitute an exception to this rule, but it is not pertinent to the present inquiry. Formerly writs were said to be returnable "to the term," because the return day was a particular day at or during the term. R. S. 1868, *supra.*

If writs of attachment issue capable of being properly and legally returned at or during a particular term of Court, and they are in fact properly levied and properly returned at or during said term, then the conditions of the statute are substantially complied with. The writs are in such case "returnable" as well as "returned to such term of the Court." It cannot logically be said, under the general meaning of the word "returnable," as given above, that a writ is properly and legally returned at or during a term of Court, without conceding that such writ was capable of being so returned, and therefore, "returnable" to such term. And even if in strictest logic there may be room to "argue still," we must insist that if we obey the statute and give it a liberal construction, there is no room to doubt.

Keeping in view the foregoing principles of satutory construction by judicial authority, the circumstances under which

the words in question were used by the Legislature, as well as their common meaning, the object and purview of the act, I am of the opinion that in this and other similar cases, the words, "returned to the same term of the Court to which they are returnable," should be held to mean and to apply to all writs of attachment which are in fact returned to, at or during the same term of Court at which, or during which, they may be properly returned according to law.

This construction works no greater hardship and is not more difficult of application than under the old system of practice. It may be applicable, with this construction, under the present system, in some cases where it would not be if the old system was in vogue, and *vice versa.* Under the present system the prorating order might have to be deferred until the close of the term, and perhaps longer. So it was under the former system, if all attachment suits were not concluded at such term. Under the present system the prorating might be more effectually secured in Courts having long terms, during which attachment writs might be returned and returnable. But these considerations are for the Legislature; they are not the fault of the Courts, and afford us no reason for not carrying out the act, as far as cases fall within its plain provisions. The act is not now, and never was, a perfect system enabling all *bona fide* creditors to participate prorata in the proceeds of an attachment debtor's property.

It was urged in argument, with considerable zeal, that the Circuit Court of the United States for this District having given a construction to this statute different from this, this Court ought to follow that opinion for sake of uniformity. Entertaining, as I do, the highest respect for the Circuit Court, and for the opinions of the several eminent Judges who preside therein, it has been with great reluctance that I have ventured to come to another conclusion and to express a contrary opinion; but it is the province of the State Courts to construe their own statutes; and until the Supreme Court of this State shall have pronounced an authoritative opinion upon a case like this, I must follow my own judgment, especially when, after exhaustive argument and mature consideration, I feel very sure that I am right.

In this particular case, and without undertaking to decide

under what circumstances, or whether under all circumstances, the statute can be enforced, the prorate order prayed for by the petitioner will be allowed.

*John L. Jerome,* attorney for plaintiffs.

*Benedict & Phelps,* attorneys for sheriff and prior attaching creditors.